**SO ORDERED.**

**SIGNED this 17 day of October, 2008.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILD WEST WORLD, L.L.C. | ) | Case No. 07-11620 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Jointly Administered |
| IN RE: | ) | |
| | ) | |
| RESTORATION FARMS, INC. | ) | Case No. 07-11913 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| WILD WEST WORLD, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 07-5257 |
| | ) | |
| LARSON INTERNATIONAL, INC., & | ) | |
| FIRST NATIONAL BANK OF | ) | |
| SOUTHERN KANSAS, | ) | |
| Defendants. | ) | |

-1-

|                                                      )|
|                                                      )|
| **FIRST NATIONAL BANK OF**                           )|
| **SOUTHERN KANSAS,**                                 )|
|                                                      )|
|                       **Third-Party Plaintiff,**     )|
| **v.**                                               )|
|                                                      )|
| **OFFICIAL UNSECURED CREDITORS'**                    )|
| **COMMITTEE, Wild West World, LLC.,**                )|
| **OFFICIAL UNSECURED CREDITORS'**                    )|
| **COMMITTEE, Restoration Farms, Inc.,**              )|
| **RESTORATION FARMS, INC.,**                         )|
| **CITIZENS BANK OF KANSAS, N.A.**                    )|
| **& THOMAS ETHEREDGE,**                              )|
|                                                      )|
|                       **Third-Party Defendants.**    )|
|                                                      )|

## MEMORANDUM OPINION

This adversary proceeding was commenced by debtor Wild West World as a preference action against Larson International, Inc. alleging Larson's preferential perfection of its security interest in an amusement ride known as the Flying Scooters ("Ride") that Larson sold to debtor. First National Bank of Southern Kansas intervened in the proceeding, claiming a prior lien on the Ride by virtue of its perfected blanket security interest in all of debtor's personal property. Larson argues that as an unpaid seller who reserved title to the Ride until being paid in full, it has an interest that primes the Bank's perfected blanket security interest in all of the debtor's assets. This priority dispute implicates provisions from Article 2 and Article 9 of the Uniform Commercial Code.

First National moves for summary judgment on its cross-claim against Larson and its

-2-

counterclaim against debtor.[1]  First National appears by its attorney William B. Sorensen.  Larson appears by its attorney Eric Bruce.[2]

Jurisdiction

This adversary proceeding is one to determine priority of liens and avoidance of an alleged preference and is therefore core.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(F) and (K).

Findings of Fact

Larson does not controvert any of First National's statements of uncontroverted fact and First National does not dispute any of the additional statements of fact set forth by Larson.  Thus, the following statements of material fact, together with the exhibits attached to the parties' submissions, are uncontroverted and supply the basis for adjudication of this dispute.

Debtor filed its chapter 11 petition on July 9, 2007.  Debtor remains as the debtor-in-possession.  The instant adversary proceeding was filed on July 31, 2007.

---

[1] Pursuant to a subsequently filed Stipulated Journal Entry of Dismissal entered July 18, 2008 all claims between First National, debtor Restoration Farms, Inc., debtor Wild West World, LLC, Citizens Bank of Kansas, N.A., and the Official Unsecured Creditors' Committees of Wild West World and Restoration Farms were dismissed, leaving only the dispute between First National and Larson to the Ride proceeds. Dkt. 120.  Previous to that, First National obtained default judgment against Thomas Etheredge, eliminating any right, interest or claim to the Ride that he might have. Dkt. 73.

[2] It should be noted that J&S Rides, Inc. sought to intervene in this adversary, contending that it was the real party in interest in this adversary, not Larson.  Pursuant to an agreed order entered January 31, 2008, J&S Rides, Inc. was allowed to intervene as the successor to Larson and the "acts, conduct, contracts, or agreements" of Larson were deemed to be those of J&S Rides.  For convenience, J&S Rides, Inc. and/or Larson International, Inc. shall be referred to as Larson.  The Court's decision today shall be binding upon J&S Rides, Inc. *See* Dkt. 89.

On November 17, 2005 debtor entered into a purchase agreement with Larson to purchase the Ride for $190,000. Pursuant to the express terms of the purchase agreement, Texas law governs the construction and enforcement of the purchase agreement. Paragraph 5 of the Terms and Conditions of the purchase agreement provides:

> 5.1 Title to the goods shall remain with the Seller until Seller actually receives payment in full for the goods, unless otherwise expressly provided in the terms appearing on the face of this Contract.
>
> 5.2 Seller shall retain a security interest on the goods sold on credit to Buyer, including all rides sold to Buyer, all parts, attachments and additions thereto now or hereafter acquired and all replacements and substitutions therefore and all proceeds from the sale of such rides, including accounts receivable, until paid in full by Buyer (the "Ride"). Seller may file any financing statements or their equivalent in any jurisdiction at any time it deems necessary to maintain its interest, with or without the signature of Buyer; Buyer agrees to execute any financing statements and any amendments thereto required by Seller and hereby specifically authorizes Seller to file such statements with its signature.

The undisputed practice in the amusement ride industry is that title to a ride does not pass until the ride has been paid in full. Pursuant to the purchase agreement, delivery of the Ride to debtor was scheduled for November 15, 2006 and the Ride was actually delivered no later than March 5, 2007. Larson filed its financing statement on the Ride with the Kansas Secretary of State's office on June 8, 2007. Larson filed a proof of claim in this bankruptcy for the unpaid balance on the Ride in the amount of $164,824.

First National loaned over $6 million to debtor for the construction of the Wild West World amusement park. In conjunction with the construction loan, debtor and First National entered into a commercial security agreement in which debtor granted a blanket security interest in debtor's property. First National filed its financing statement with the Kansas Secretary of State on March

-4-

24, 2006 perfecting a security interest in all business assets of the debtor.[3] First National's lien secures a claim of $6,507,871.

During the pendency of this bankruptcy, the Ride was liquidated and debtor holds net proceeds of $85,800, plus accrued interest. The prevailing party in this adversary will be entitled to these sale proceeds.

Analysis and Conclusions of Law

**A.     Seller's Reservation of Title and UCC § 2-401**

Larson asserts that notwithstanding its delivery of the Ride to debtor in March 2007, it reserved title to the Ride pursuant to the explicit terms of the purchase agreement and industry practice and that title to the Ride did not pass to debtor until the Ride was paid in full. Larson therefore reasons that debtor had no interest in the Ride to which a security interest (including First National's) could attach and therefore, its ownership interest in the Ride is superior to First National.

First National counters that § 2-401 of the Uniform Commercial Code limits a seller's ability to reserve title once the seller has delivered the goods to the buyer. It relies upon *In re Samuels & Co.*[4] First National contends that once the goods are delivered, the effect of reserving title is to give the seller a security interest in the goods delivered. It further argues that since Larson did not timely perfect its purchase money security interest, Larson's interest in the Ride is inferior to First National's interest.

---

[3] It appears, based upon the documentation attached to First National's proof of claim, that the construction loan made to debtor in the spring of 2007 was preceded by a line of credit extended to debtor in 2006 and that the subject financing statement was filed in connection with the 2006 financing transaction.

[4] *Stowers v. Mahon (In re Samuels & Co.)*, 526 F.2d 1238 (5th Cir. 1976), *cert. denied* 429 U.S. 834 (1976).

The parties disagree on the interpretation of § 2-401. The pertinent parts of the UCC text of § 2-401 titled "Passing of Title; Reservation for Security; Limited Application of This Section," states:[5]

> Each provision of this Article with regard to the rights, obligations, and remedies of the seller, the buyer, purchasers, or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material, the following rules apply:
>
> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed, the buyer acquires by their identification a special property as limited by this Act. *Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to Article 9*, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.[6]

Texas' version of § 2-401, while containing lettered paragraphs rather than numbered paragraphs, is identical to the UCC official text.[7] For ease of reference, the Court will simply reference § 2-401 in this opinion.

The Court has carefully reviewed the parties' case authorities and concludes that *Samuels*, cited by First National, is a correct interpretation of the law. Although *Samuels* involved an unpaid seller's reclamation claim vis-a-vis the buyer's creditor claiming a security interest in after-acquired property, that factual distinction has no bearing on the outcome of the case at bar.[8] The pertinent

---

[5] UNIF. COMM. CODE § 2-401 (Vol. 1A, Uniform Laws Annotated, Master ed.). Paragraphs (2), (3) and (4) of § 2-401 are not implicated under the facts here.

[6] Emphasis added.

[7] TEX. BUS. & COM. CODE ANN. § 2.401 (2005).

[8] As the *Samuels* court noted, a seller's reclamation right is a remedy provided to the seller *against the buyer*. It does not concern rights against third parties. 526 F.2d at 1244.

-6-

legal conclusion in *Samuels* applicable here is that the interest of an unpaid seller in goods already delivered to a buyer is subordinate to the interest of the holder of a perfected security interest in those same goods.[9] That legal conclusion is based upon the Fifth Circuit Court of Appeals' interpretation of UCC § 2-401. As the Fifth Circuit observed:

> However, the U.C.C. specifically limits the seller's ability to reserve title once he has voluntarily surrendered possession to the buyer: "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." § 2.401(a).[10]

*Samuels* holds that this limitation applies whether the sale is a cash sale or a credit sale.[11] The *Samuels* court went on to address the perceived unfairness to the unpaid seller.

> Any seeming unfairness to [sellers] resulting from the Code's operation is illusory, for the sellers could have protected their interests, even as against [a third party's] prior perfected interest, if they had merely complied with the U.C.C.'s purchase-money provisions. [citations omitted] The Code favors purchase-money financing, and encourages it by granting to a seller of goods the power to defeat prior liens. The seller at most need only (1) file a financing statement and (2) notify the prior secured party of its interest before delivery of the new inventory. The procedure is not unduly complex or cumbersome. But whether cumbersome or not, a [seller] who chooses to ignore its provisions takes a calculated risk that a loss will result.
>
> In the instant case [sellers] did not utilize § 9.312's purchase-money

---

[9] The act of delivery of goods to the buyer, gives the buyer (or debtor) sufficient rights in the goods to allow attachment of a security interest. *Id.* at 1242-43. *See also, Interfirst Bank of Abilene, N.A. v. Lull Manufacturing*, 778 F.2d 228, 234 (5th Cir. 1985)

[10] 526 F.2d at 1246. *See also, Interfirst Bank of Abilene, supra; In re Hartman*, 102 B.R. 90 (Bankr. N.D. Tex. 1989) (With the adoption of the Texas Business and Commercial Code, a sale of goods with retention of title by the seller until the goods are paid now creates a security interest which must be perfected by proper filing, citing *Sommers v. I.B.M. (In re Legal Cooperatives, Inc.)*, 640 F.2d 686, 689 (5th Cir. 1981)); *Peerless Equipment Co. v. Azle State Bank*, 559 S.W. 2d 114 (Tex. Civ. App. 1977) (unpaid cash seller's reservation of title in trencher and trailer delivered to buyer was limited to reservation of a security interest and, where unperfected, was subordinate to bank's perfected security interest in same equipment.).

[11] 526 F.2d at 1246.

-7-

provision. The sellers never perfected. Thus, in a competition with a perfected secured party they are subordinated, and in this case, lose the whole of their interests. [citations omitted].[12]

Numerous other courts across the country are in accord with *Samuels* and interpret § 2-401 in a like fashion.[13] Section 2-401(1) negates the ability to delay passage of title beyond delivery. Any express agreement of the parties or reservation of title in the seller is limited by § 2-401(1).[14] Moreover, § 2-401(1) cannot be varied by custom and usage in the trade, course of dealing, or agreement.[15]

The Court rejects Larson's argument that because it has expressly reserved title until full payment under the purchase agreement, it avoids the operation of § 2-401(1). Larson seizes upon the "unless otherwise explicitly agreed" language in the first sentence and the "title . . . passes . . . in any manner and on any conditions explicitly agreed on by the parties" language in the third sentence of § 2-401(1). However, it ignores the prefatory language in the statute: "*Subject to these*

---

[12] *Id.* at 1247-48.

[13] *See e.g., In re J. Adrian Sons, Inc.,* 205 B.R. 24, 26-27 (Bankr. W.D. N.Y. 1997) (lessor who had 60 month lease with purchase option that specified that title to equipment did not pass until it received payment in full, held an unperfected security interest in equipment and was not entitled to stay relief; § 2-401(1) limits the parties' contractual freedom); *In re Morken*, 182 B.R. 1007, 1020-21 (Bankr. D. Minn. 1995) (Section 2-401(1) creates a seller's security interest when the seller retains title in goods delivered to a buyer; the article 2 security interest is subject to the provisions of article 9 and must be perfected); *In re Uni-Products, Inc.*, 153 B.R. 764, 768 (Bankr. E. D. Mich. 1993); *In re Keystone General, Inc.*, 135 B.R. 275, 279 (Bankr. S.D. Ohio 1991); *Maryott v. Oconto Cattle Co.,* 259 Neb. 41, 607 N.W. 2d 820, 825-27 (2000); and *Cooperative Finance Ass'n v. B&J Cattle Co.,* 937 P.2d 915, 920 (Colo. App. 1997).

[14] *In re Keystone General, Inc., supra; Maryott, supra.*

[15] *See First Nat. Bank of Elkhart County v. Smoker*, 153 Ind. App. 71, 287 N.E.2d 788 (1972); *Maryott, supra* at 826. In any event, the Court questions Larson's reliance on industry custom and practice where the purchase agreement contains a merger clause: ". . . No course of prior dealings between the parties and no usage of the trade shall be relevant to supplement or explain any term used in this agreement." Purchase Agreement, Terms and Conditions, ¶ 2.

-8-

*provisions* and to Article 9, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."[16] It could not be any clearer to this Court that the ability to expressly agree on when title passes to the buyer is *subject to* the second sentence of § 2-401(1). The limiting operation of reservation of title found in the second sentence of § 2-401(1) is triggered by delivery. Delivery of the goods is the key. It is only when the seller has delivered the goods to the buyer that a seller's express reservation of title is limited to retention of a security interest. If there has been no delivery, the express reservation of title may be enforced.

The Court therefore concludes that Larson is an unpaid credit seller of the Ride to debtor. Larson's reservation of title until the Ride was paid in full, by both the express terms of the purchase order and by industry custom and practice, is negated and limited by operation of § 2-401(1). Because Larson voluntarily delivered the Ride to debtor prior to payment in full, Larson retained only a security interest in the Ride.

### B. Priority Between Larson and First National -- UCC § 9-322 and § 9-324[17]

Having concluded that Larson retained only a security interest in the Ride, the Court next determines priority between the two competing security interests in the Ride – Larson versus First National.

The general rule of priority between parties claiming a perfected security interest in the same property is "the first-to-file." This general rule is set forth in KAN. STAT. ANN. § 84-9-322(a)(1) (2007 Supp.). Likewise, a perfected security interest takes priority over an unperfected security

---

[16] Emphasis supplied.

[17] Kansas law, as provided for in Revised Article 9 of the UCC as adopted in Kansas, governs the priority battle between Larson and First National.

interest in the same collateral.[18]

KAN. STAT. ANN. § 84-9-324(a) (2007 Supp.) provides an exception to the general priority rules and creates a special priority for purchase money security interests. It elevates the holder of a purchase money security interest over a perfected non-purchase money security interest in the same collateral, provided the purchase money creditor perfects its security interest within twenty days of delivery of the collateral to the debtor. This special priority rule for purchase money security interests applies even if the non-purchase money security interest was perfected by filing prior to the purchase money security interest.

Here, there is no dispute that Larson held a purchase money security interest in the Ride.[19] The uncontroverted facts establish that the debtor received possession of the Ride no later than March 5, 2007, when Larson delivered the Ride to debtor. Thus, Larson had until March 25, 2007 in which to file its financing statement to perfect its purchase money security interest in the Ride[20] and obtain special priority status under § 84-9-324(a). The uncontroverted facts further establish that Larson did not perfect its purchase money security interest in the Ride until June 8, 2007, outside the 20-day period from delivery. Accordingly, Larson is not entitled to special priority over First National as the holder of a purchase money security interest.

This means that the Court must fall back to the general priority rules in § 84-9-322(a)(1) to determine the priority between Larson and First National. The undisputed facts establish that First National perfected its blanket security interest by filing a financing statement on all of debtor's

---

[18] KAN. STAT. ANN. § 84-9-322(a)(2) (2007 Supp.).

[19] *See* KAN. STAT. ANN. § 84-9-103(a) and (b) (2007 Supp.).

[20] A security interest in goods is perfected by filing a financing statement. *See* KAN. STAT. ANN. § 84-9-310(a) (2007 Supp.).

-10-

"business assets" (including the Ride) on March 24, 2006. Since Larson did not perfect its security interest in the Ride until filing its financing statement on June 8, 2007, First National was the "first-to-file" and its security interest is prior to Larson's.

By failing to timely perfect its purchase money security interest after delivery of the Ride, Larson finds itself in the same unfortunate position as the unpaid seller in *Samuels.* Larson failed to avail itself of the special priority and protection afforded holders of purchase money security interests and must suffer the loss.

### C. Priority Between Debtor and First National

As noted previously, after First National filed this summary judgment motion, debtor and First National settled the claims between them with respect to the Ride. Pursuant to that settlement, it was stipulated that the Ride was an asset of debtor's estate, that the Ride proceeds would be disbursed to First National (subject to adjudication of Larson's interest therein), and the parties agreed to dismissal of all claims in this adversary, except for the priority dispute between Larson and First National.[21] The stipulated journal entry of dismissal entered in this adversary effectuates the settlement of any claims by and among debtor and First National and provides that only Larson's competing claim to the Ride proceeds remains.[22] Accordingly, the Court need not address priority to the Ride proceeds as between debtor and First National.

Conclusion

Pursuant to UCC § 2-401(1)'s limiting operation, Larson's reservation of title to the Ride that it sold and voluntarily delivered to debtor effected only a reservation of a security interest in the

---

[21] No. 07-11620, Dkt. 1235 and 1282.

[22] *See* Dkt. 120, ¶ 2.

Ride.  As the first to file its financing statement on the Ride, First National's perfected security interest in the Ride is prior to and superior to Larson's competing perfected security interest under KAN. STAT. ANN. § 84-9-322(a)(1).  Because Larson failed to perfect its security interest within 20 days of delivery of the Ride to debtor, it is not entitled to special priority as the holder of a perfected purchase money security interest in the Ride under KAN. STAT. ANN. § 84-9-324(a).  Accordingly, First National has priority to the Ride proceeds and is entitled to summary judgment on its claim against Larson for the amount of the Ride proceeds, together with accrued interest thereon.  A Judgment on Decision shall issue this day.

# # #